KEHOTA MINING CO. v. LEWELLYN.

SAME v. HEINER, Collector of Internal Revenue.

District Court, W. D. Pennsylvania. July 30, 1928.

Nos. 4941, 4942.

Smith, Shaw & McClay, of Pittsburgh, Pa., for plaintiff.

John D. Meyer, U. S. Atty., of Pittsburgh, Pa., and C. M. Charest, John A. McCann, and F. J. Ready, Jr., all of Washington, D. C., for defendant.

SCHOONMAKER, District Judge. These two actions are for the recovery of income taxes alleged to have been illegally collected from the plaintiff, a mining corporation, by the two defendants as collectors of internal revenue. A jury trial was waived, and both cases were tried together. The suit against Lewellyn, the former collector, is to recover taxes paid during his term of office; i. e., $10,815.80, based on plaintiff's original return for the year 1918, and the first two installments, aggregating $54,498.66, based on plaintiff's original tax return for the year 1920, or a total of $65,314.46. The suit against Heiner, the present collector, is to recover taxes paid to him; i. e., an additional

assessment of $5,211.36 for the year 1918, and the last two installments of the 1920 assessment aggregating $54,498.66, making a total claim of $59,710.02.

There are no disputed issues of fact. The parties are agreed upon the facts of the case. The dispute in these cases arises over the depletion and depreciation allowance that properly accrued to the plaintiff for the years in question under the tax laws and the regulations thereunder.

The plaintiff appealed from the assessment made by the Commissioner to the United States Board of Tax Appeals, which sustained the plaintiff's contention (3 B. T. A. 885); but the Commissioner filed his nonacquiescence in the Board's decisions, and the plaintiff brought these two suits to recover the taxes paid under the Commissioner's assessments.

█ The facts of the case as to the depletion item are as follows: The plaintiff is a coal-mining corporation. In October, 1916, it acquired coal properties at a cost of $266,700, which were estimated to contain approximately 3,822,530 tons of recoverable coal. The depletion deductions for the years in question were computed on the basis of this estimate. This estimate, however, was revised in 1922, when it was then estimated that the plaintiff had acquired in 1916 only 3,205,958 tons recoverable coal. The plaintiff seeks to go back now and correct its depletion allowances on the basis of the 1922 estimate of recoverable coal. The Commissioner contends that this cannot be done under the law and regulations, and that the 1922 estimate is to be used only for the years succeeding the revised estimate.

The taxpayer, in his original tax returns, took a deduction of 10 cents per ton for depletion for all coal produced during the years in question. The Commissioner reduced this allowance to 7 cents per ton, which figure he arrived at by dividing the total cost of the property, $266,700, by 3,822,530. The Board of Tax Appeals arrived at a depletion allowance of 8.31888 cents per ton, which figure was arrived at by dividing the total cost, $266,700, by 3,205,958 tons, the amount of the revised estimate of 1922.

Under this state of facts, we find that the Commissioner was correct in his method of computing the depletion allowance. The Revenue Act of 1918 (40 Stat. 1057) by section 234 (a)(9) provides:

"In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for deprecia-

tion of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted. * * * Such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary."

Regulations 45 (Revised 1920 Edition) issued January 28, 1921, as T. D. 3146, article 208, provided:

"*Determination of mineral contents of mine.* Every taxpayer claiming a deduction for depletion for a given year will be required to estimate or determine with respect to each separate property the total units (tons, pounds, ounces, or other measure) of mineral products reasonably known or on good evidence believed to have existed in the ground on the basic date, according to the method current in the industry and in the light of the most accurate and reliable information obtainable. * * *

"If subsequent developments show a material error in the original estimate, a new estimate may be made and the capital remaining to be recovered distributed accordingly."

Under the language of this regulation, it is perfectly plain that the new estimate is only to be applied to "the capital remaining to be recovered." There is absolutely no authority for going back to the preceding tax years and changing the depletion allowances already deducted.

The taxpayer is entitled to recover, by way of depletion, the cost of his property. A part of this cost has already been allowed to him in a computation based on the estimated quantity of mineral products in the property. On the making of a new or corrected estimate, thereafter the annual depletion allowance will be computed on the basis of the new estimate, and allowed to the taxpayer, until the entire cost of the property has been recovered by way of depletion allowances. There can be no misunderstanding of the language of the regulation. The new estimate is only to be used in determining the allowances to be distributed annually to the *capital remaining to be recovered.*

In our opinion, the Board of Tax Appeals erred in holding otherwise, when they had for consideration this taxpayer's appeal. They, however, seemed to be convinced of their error in this respect, for in two later cases—i. e., Stouts Mountain Coal Co. v. Commissioner, 4 B. T. A. 1292, and Sterling Coal Co. v. Commissioner, 8 B. T. A. 549—the Board re-

fused to follow their ruling in the Kehota Mining Co. Case.

Next, as to the depreciation item, the facts are as follows: The plaintiff operated what is known as strip mine, and had in operation seven complete steam shovel units, each with a capacity of 500,000 tons or practically a capacity sufficient to strip and remove the entire coal product underlying the plaintiff's property. The plaintiff's machinery and equipment cost $1,059,098.05. The plaintiff, in its tax returns, deducted a depreciation of 25 cents per ton for each ton of coal produced. The Commissioner, under his audit, allowed depreciation upon the basis of tonnage produced, treating the useful life of the physical equipment as coextensive with that of the mine, using for the purpose of his computation the original estimate of 3,822,520 tons. The plaintiff and the Board of Tax Appeals apply the same general basis, i. e., production tonnage, in depreciating the physical equipment other than shovel equipment, but use the revised estimate of 1922, of 3,205,958 recoverable tons, just as in the case of depletion, and in the case of the shovel equipment based their figures on 500,000 tons of coal, being the combined producing life of all the shovels, instead of 500,000 tons per shovel unit, according to their own findings. The actual life of these seven shovel units was 3,500,000 tons, and not 500,000 tons.

Under this state of facts, we conclude that there was no error in the Commissioner's computation of depreciation. Article 165 of Regulations 45 provides, as to depreciation allowance, as follows:

"*Method of computing depreciation allowance.* The capital sum to be replaced should be charged off over the useful life of the property either in equal annual installments or in accordance with any other recognized trade practice, such as an apportionment of the capital over units of production. Whatever plan or method of apportionment is adopted must be reasonable and should be described in the return."

As the life of this equipment was practically coextensive with the life of the mines, we hold that the Commissioner's method of computing the depreciation was the reasonable and correct one, and that for the years in question the use of the original estimate of the recoverable coal in computing the depreciation was correct.

Therefore we conclude that the plaintiff is not entitled to recover in either of the cases. An order for judgment in favor of the defendant in each case may be submitted.